# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ORANGEBURG DIVISION

| | |
|---|---|
| MICHAEL JUSTIN KENNEDY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 5:21-cv-03715-DCN-KDW |
| vs. ) | |
| ) | **ORDER** |
| SGT. FRANCIS, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on United States Magistrate Judge Kaymani D. West's report and recommendation ("R&R"), ECF No. 67, that the court deny defendant Sgt. Joseph Francis's ("Sgt. Francis") motion for summary judgment. ECF No. 49. For the reasons set forth below, the court adopts the R&R and denies the motion.

## I.  BACKGROUND

The R&R ably recites the facts as stated in the complaint, and the parties do not object to the R&R's recitation thereof. Therefore, the court will only briefly summarize material facts as they appear in the R&R for the purpose of aiding an understanding of the court's legal analysis.

Plaintiff Michael Justin Kennedy ("Kennedy") was a pretrial detainee in the custody of the South Carolina Department of Corrections and was, at all relevant times, housed at the Greenville County Detention Center ("GCDC") in Greenville, SC.

Many of the relevant facts leading up to the incident, and immediately after, are not in dispute or were otherwise captured on video surveillance footage provided to the court. See ECF No. 49-3 (Ex. A) and ECF No. 49-4 (Ex. B.). The incident giving rise to this claim occurred on August 22, 2021. ECF No. 1 at 7, Compl. In essence, after an

1

inmate was assaulted in S-Dorm, the inmates in that dorm refused to comply with the commands of several corrections officers. As a result, and after being warned over the intercom that officers were going to intervene, corrections officers entered S-Dorm and extracted the inmates from that area. Kennedy and ten other inmates barricaded themselves in the dorm in an extended standoff with GCDC officers who thereafter used tactical instruments against the inmates at about 6:30pm. ECF No. 12 at 1; ECF No. 27-1 at 2. The standoff lasted for about 20 hours. Id. Kennedy claims Sgt. Francis sprayed him in the face with pepper gas, shoved him, and shot him in the back while Kennedy was face down on the floor expressing his First Amendment rights "about what was taking place." Compl. at 7. Kennedy alleges he suffered a bruise on his back from the projectile "shot from the tact gun[,]" and his vision was blurred for about two weeks. Compl. at 9. He further alleges he was denied medical treatment. Id. Kennedy has not amended his complaint, but he has filed additional documents that expand upon and/or supplement his initial complaint. See ECF Nos. 12, 31, 48.

On November 11, 2021, Kennedy filed this action in federal court alleging defendants violated his constitutional rights afforded by the First, Fifth, and Eighth Amendments under 42 U.S.C. § 1983. This case was referred to Magistrate Judge West for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(d) and (e) (D.S.C.). On September 30, 2022, the court dismissed the claims against Mr. Bodiford, Mr. Hollister, GCDC, and various unnamed administrative staff for failure to state a claim, leaving only the claims against Sgt. Francis. ECF No. 59. On July 13, 2022, Sgt. Francis moved for summary judgment. ECF No. 49. Kennedy responded in opposition on August 8, 2022, ECF No. 55, and

subsequently sent two letters—one addressed to the magistrate judge on August 24, 2022, ECF No. 57, and the other to the office of the clerk on September 12, 2022, ECF No. 58. On November 22, 2022, the magistrate judge issued the R&R, recommending the court deny the motion for summary judgment. ECF No. 67 ("R&R"). Sgt. Francis objected to the R&R on December 6, 2022. ECF No. 69. Kennedy neither responded to Sgt. Francis's objections, nor filed objections to the R&R, and the time to do so has now expired. As such, the matter is ripe for the court's review.

## II. STANDARD

### A. Order on R&R

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the Magistrate Judge. See Thomas v. Arn, 474 U.S. 140, 149–50 (1985). The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270–71 (1976). The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1). The court is charged with making a de novo determination of any portion of the R&R to which a specific objection is made. Id.

However, in the absence of a timely filed, specific objection, the court reviews the R&R only for clear error. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted). Furthermore, "[a] party's general objections are

not sufficient to challenge a magistrate judge's findings." Greene v. Quest Diagnostics Clinical Labs., Inc., 455 F. Supp. 2d 483, 488 (D.S.C. 2006) (citation omitted). When a party's objections are directed to strictly legal issues "and no factual issues are challenged, de novo review of the record may be dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982) (citation omitted). Analogously, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in a magistrate judge's proposed findings. Id.

### B. Pro Se Litigants

Kennedy is proceeding pro se in this case. Pro se complaints and petitions should be construed liberally by this court and are held to a less stringent standard than those drafted by attorneys. See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), cert. denied, 439 U.S. 970, 99 (1978). A federal district court is charged with liberally construing a complaint or petition filed by a pro se litigant to allow the development of a potentially meritorious case. See Hughes v. Rowe, 449 U.S. 5, 9 (1980). Liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a cognizable claim. See Weller v. Dep't of Soc. Servs., 901 F.2d 387, 390–91 (4th Cir. 1990).

### C. Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[S]ummary judgment will

not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. At the summary judgment stage, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in his favor. Id. at 255.

### III.   DISCUSSION

The magistrate judge concluded in the R&R that Kennedy had sufficiently pled an excessive force claim under 42 U.S.C. § 1983 against Sgt. Francis, and that the claim should survive Sgt. Francis's motion for summary judgment. See generally R&R. In reaching this conclusion, the magistrate judge first recommended finding that there is a genuine dispute of material fact as to whether the force Sgt. Francis employed was objectively reasonable and did not violate Kennedy's rights. Id. at 8. Second, the magistrate judge recommended denying summary judgment on qualified immunity grounds because there also exists a genuine dispute as to whether Sgt. Francis is entitled to qualified immunity for the alleged incident. Id. at 13–14. Sgt. Francis objects to the R&R and argues that there is no genuine issue of fact because there is no evidence to support the claim that the force was excessive. ECF No. 69 at 2–3. Rather, Sgt. Francis argues that all the evidence before the court suggests that the force used was objectively reasonable. Id. at 2–3. Sgt. Francis does not appear to contest the R&R's conclusions regarding qualified immunity, aside from the underlying disagreement with the excessive force claims. The court examines the objections and the R&R in turn.

In the absence of a timely filed, specific objection, the court reviews the R&R only for clear error. Diamond, 416 F.3d at 315. In concrete terms, the court reviews de

novo Magistrate Judge West's conclusions regarding whether the use of force was excessive, and reviews for clear error all other recommendations.

### A. Excessive Force

The R&R concluded that "there remains a question of fact whether [Sgt. Francis] reasonably perceived a threat and whether [Kennedy] was indeed actively resisting commands at the time [Sgt. Francis] shot him in the back with a Pepperball." R&R at 11. This recommendation relies on the affidavits submitted by both parties, the video footage provided from the incident, and Kennedy's response in opposition to the motion for summary judgment. See id. at 11–13. Consequently, the R&R recommended that the court should find there remains a question of fact as to whether the use of force was objectively reasonable and should deny the motion. Id. at 13.

Sgt. Francis objects to this recommendation. ECF No. 69. Specifically, he disagrees with the magistrate judge and argues there is no dispute that the use of force was justified and objectively reasonable under the circumstances. Id. at 2. He argues that the video footage shows that an officer gives a loud verbal instruction to "lay still and keep your hands on your back or force will be used if you move. Do you understand?", ECF No. 49-3 (Ex. A) at 2:07–2:14, and a few seconds later, an unidentified person can be heard saying, "you shot me in my back, man," id. at 2:19–2:20. Sgt. Francis argues that the footage, when combined with the Supervisor Summary Report and the attestations and incident reports provided to the court, reflect that the force was applied only after Kennedy refused to comply with the instructions. See ECF No. 69 at 2–3 (citing ECF No. 49-2 ¶¶ 6–7; ECF No. 49-7 at 42, 44; ECF No. 49-7 at 10). Further, Sgt. Francis claims that Kennedy "has presented no evidence to show that an application of

6

force by [Sgt.] Francis was not necessary." Id. at 3. Additionally, Sgt. Francis argues that there is no evidence of any harm to Kennedy. Id. At best, he claims there is evidence of a single bruise, but no evidence that Kennedy had "blurred vision" from the pepper ball fired by Sgt. Francis. Id. Rather, Sgt. Francis suggests that the "blurred vision," to the extent it occurred, came from the pepper balls erroneously dropped on the floor and trod upon by other officers. Id. This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). The court examines Sgt. Francis's objections in turn.

The Supreme Court has expressly rejected the notion "that all excessive force claims brought under § 1983 are governed by a single generic standard." Graham v. Connor, 490 U.S. 386, 393 (1989). The Court held that claims of post-arrest excessive force against an arrestee or pre-trial detainee are governed by the Due Process Clause of the Fourteenth Amendment, which prohibits before conviction "the use of excessive force that amounts to punishment." Id. at 395 & n.10.

"The constitutional protections afforded to a pre-trial detainee as provided by the Fourteenth Amendment are at least co-extensive with those provided to convicted prisoners by the Eighth Amendment." Karn v. PTS of Am., LLC, 590 F. Supp. 3d 780, 809 (D. Md. 2022) (internal citations omitted). Under the Fourteenth Amendment standard, a plaintiff must show that the defendant "inflicted unnecessary and wanton pain and suffering upon the detainee." Carr v. Deeds, 453 F.3d 593, 605 (4th Cir. 2006) (citations and internal quotation marks omitted). "This standard turns on the perspective of a reasonable officer and must account for the state's legitimate need to manage the

7

correctional facility." Coney v. Davis, 809 F. App'x 158, 159 (4th Cir. 2020). To succeed on an excessive force claim, a pre-trial detainee "must show only that the force purposely or knowingly used against him was objectively unreasonable." Id. (quoting Kingsley v. Hendrickson, 576 U.S. 389, 396–97 (2015)). A court must consider factors such as (1) "the relationship between the need for the use of force and the amount of force used," (2) "the extent of the plaintiff's injury[,]" and (3) "any effort made by the officer to temper or to limit the amount of force." Kingsley, 576 U.S. at 397. The court also should consider "the severity of the security problem at issue," "the threat reasonably perceived by the officer[,] and whether the plaintiff was actively resisting." Id. The "core judicial inquiry" does not concern the extent of the injury but rather the nature of the force—"specifically, whether it was nontrivial and 'was applied . . . maliciously and sadistically to cause harm.'" Wilkins v. Gaddy, 559 U.S. 34, 39 (2010) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). Whether the force was objectively reasonable must be viewed in "full context," because segmenting the events in analysis "misses the forest for the trees." Duff v. Potter, 665 F. App'x 242, 244 (4th Cir. 2016) (quoting Smith v. Ray, 781 F.3d 95, 101 (4th Cir. 2015)).

The court first examines Sgt. Francis's claims regarding the extent of Kennedy's injuries and thereafter examines the reasonableness of Sgt. Francis's force.

### 1. De Minimis Injury

Sgt. Francis challenges the magistrate judge's implicit acceptance that Kennedy's injury was sufficient to give rise to an excessive force claim.

The video evidence supports finding that Kennedy was able to speak and did not appear injured after he was hit with the pepper ball. See Ex. A 2:19–2:22. Kennedy

himself admits to yelling at the officers after the incident. ECF No. 55 ¶ 5. Sgt. Francis shot Kennedy in the lower back, which thereafter bruised. Kennedy alleges he had blurred vision for two weeks after the incident, which the magistrate judge attributed to Sgt. Kennedy's shooting. Sgt. Francis, however, explained that blurred vision resulted from the pepper balls dropped on the floor that were trod upon by the other officers. ECF No. 69 at 3; ECF No. 49-2, Francis Aff. ¶¶ 7, 11. After the incident, Kennedy claims he told Sgt. Francis that he needed to see medical, ECF No. 55 ¶ 10, though Sgt. Francis claims Kennedy never requested medical care after he was struck by the pepper ball, Francis Aff. ¶ 12.

The Supreme Court expressly held in Wilkins that an inmate is not required to show that he suffered more than a de minimis injury to satisfy the objective prong. Wilkins, 559 U.S. at 38–39. Instead, the objective prong asks whether the force used was more than de minimis force, which is the required analysis. Hill v. Crum, 727 F.3d 312, 320–21 (4th Cir. 2013) (recognizing that it is "the nature of the force, rather than the extent of the injury, [that] is the relevant inquiry"). Although the lack of any injury is a factor that can be considered in determining whether the force used was de minimis, a de minimis injury alone does not preclude a valid excessive force claim. Wilson v. Miller, 2020 WL 3441238, at *5 (W.D. Va. June 23, 2020).

Thus, Kennedy's de minimis injury is merely a factor in the reasonable force analysis and does not, by itself, prevent the court from finding that a genuine dispute of material fact exists for Kennedy's excessive force claim.

## 2. Reasonable Force

The magistrate judge identified various facts that support the contentions of both parties—but emphasized that at summary judgment all reasonable inferences must be made in favor of the non-moving party. Anderson, 477 U.S. at 255. The magistrate judge found that a genuine issue of material fact remained as to whether the force exerted was reasonable at the time it was exerted. R&R at 12–13.

In Scott v. Harris, the Supreme Court held that when "opposing parties tell two different stories, one of which is blatantly contradicted" by video evidence contained in the record such "that no reasonable jury could believe it, a court should not adopt that version of the facts." 550 U.S. 372, 280 (2007). The Fourth Court has further explained that "the principle articulated in Scott does not license a court to reject one side's account as a matter of law if the 'documentary evidence, such as a video,' merely 'offers some support for [the other side's] version of events.'" Sawyer v. Asbury, 537 F. App'x 283, 291 (4th Cir. 2013) abrogated on other grounds by Kingsley, 576 U.S. at 396–97, as recognized by Brooks v. Johnson, 924 F.3d 104, 114 n.4 (4th Cir. 2019) (quoting Witt v. W. Va. State Police, Troop 2, 633 F.3d 272, 276 (4th Cir. 2011)) (emphasis in original). "Rather, the video controls only where it 'blatantly contradict[s]' one side's testimonial account." Id.

To be sure, the court finds there are several factors in favor of finding a use of reasonable force. The incident occurred after the standoff between GCDC officers and the inmates in S-Block had already lasted twenty hours. ECF No. 12 at 1. The inmates repeatedly refused directives from the GCDC officers. ECF No. 49-5, Leonard Aff. ¶ 5. Moreover, a legitimate security issue was implicated because the inmates began making

10

extravagant demands—cartons of cigarettes, prostitutes, and gourmet meals—and obscuring view of the dorms by placing a sheet over the surveillance camera. Leonard Aff. ¶ 4; ECF No. 49-7 at 39 ("Supervisor Summary Rep."). Additionally, the officers employed several different tactics prior to cell extraction in attempt to garner compliance from the inmates and to avoid more extreme measures.[1] Leonard Aff. ¶ 6; Supervisor Summary Rep. at 4–5.

On the other hand, the evidence is unclear whether the threat was still in effect at the time of the Pepperball shooting. In other words, if Sgt. Francis shot Kennedy while he was face down in compliance with officers' orders, it precludes a finding that the shooting was reasonable notwithstanding the long standoff preceding the officers' entry into the dorm. The video footage shows that most of the inmates, including Kennedy, were in their cells when the officers came into S-Block. R&R at 11; Ex. A at 0:00–2:20. Lieutenant Leonard stated that Kennedy was behind him when he ordered the inmates to lie down, which means Leonard cannot testify with certainty that Kennedy failed to comply. R&R at 12; Leonard Aff. ¶ 17. Kennedy himself alleges he was shot after he complied. R&R at 12; ECF No. 55 ¶ 3. The R&R additionally relies on the absence of evidence—namely, lack of reports from the other officers that indicate that there was any inmate that refused to follow directives. R&R at 12–13.

---

[1] These included issuing the commands to the inmates over the intercom, explaining to the inmates that failure to comply would result in the dorm turning into a special housing unit where responsible inmates lost all television, telephone, canteen, and kiosk privileges, and even holding a K-9 aloft to show the inmates the dog through the window prior to the officers' entry into the dorm. Leonard Aff. ¶ 6; Supervisor Summary Rep. at 9.

11

The court agrees with the magistrate judge and finds that there exists a genuine dispute of material fact as to whether Sgt. Francis's use of force was objectively reasonable at the time it was exerted. In the light most favorable to him, Kennedy has provided sufficient evidence to dispute Sgt. Francis's claims that Kennedy was refusing to comply when he was shot. Thus, summary judgment is denied on Kennedy's excessive force claim.

### B. Qualified Immunity

The R&R recommended the court deny summary judgment with regards to the defense of qualified immunity to which neither party objected—this court now reviews that conclusion for clear error. Finding none, the court adopts the magistrate judge's recommendation, and denies the motion for summary judgment on qualified immunity grounds.

The Supreme Court has established a two-step analysis for qualified immunity claims. See Saucier v. Katz, 533 U.S. 194, 201 (2001). First, the court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation.'" Wilson v. Layne, 526 U.S. 603, 609 (1999) (quoting Conn v. Gabbert, 526 U.S. 286, 290 (1991)); see also Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000). The court's analysis of excessive force, supra III.A., shows that it is arguable whether the plaintiff has alleged the deprivation of a constitutional rights, and that inquiry depends on disputed material facts. But, it is clearly established that an arrestee or pretrial detainee is protected from the use of excessive force. Bell v. Wolfish, 441 U.S. 520 (1979). Moreover, the Supreme Court and the Fourth Circuit have clearly

held that examination of the force used, not the prior de minimis injury standard, govern such cases. See Hill, 727 F.3d at 322 (considering the impact of Wilkins on the clearly established law prong of qualified immunity cases). Consequently, the court finds no clear error in the magistrate judge's analysis and the court formally denies Sgt. Francis's motion for summary judgment on qualified immunity grounds.

## IV.   CONCLUSION

For the foregoing reasons the court **ADOPTS** the R&R and **DENIES** Sgt. Francis's motion for summary judgment.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**February 28, 2023**
**Charleston, South Carolina**